May it please the court, I am here on behalf of officer Nicholas Holley, officer Jonesboro Police Department, who is entitled in this case to have qualified immunity because on the record there is no reasonable juror who would believe that officer Holley was not in a fight for his life at the time he shot and killed Mr. Williams on October the 31st 2011. Unfortunately the district court denied his motion for summary judgment based on qualified immunity and what troubles me about the case was the reasons that the court denied a summary judgment I feel were were not facts of record but instead were inferences drawn from arguments by by Mr. Williams counsel. For instance the judge found as a matter of fact that Mr. Williams posed no physical threat to officer Holley but there was no proof of that in the record in the record it was clear that they were fighting there's nothing in the record to indicate that they were not fighting. This presents a problem we have in all these cases which is you have the the one witness is deceased to counter counterdict the officer. Now did the plaintiff Rosetta Williams did she observe this or did any were there any independent witnesses? None. Okay now then then a question boils down to for the district judge is what are reasonable inferences from the facts that are known and what speculation. Speculation obviously can't support it but so what and this for Ms. Verden too is a question is what what are reasonable inferences and what are speculation? Well I think what Ms. Verden did which is what I would have done too if I were if I had her side of the case is I would take any little any little thing I could find and try to convince the court that this is something that shows that the officer is not telling the truth but and if those things that she argued about would have been facts in the record I think that's fine. I think the difference between speculation relying on speculation and inferences from facts are you know that what's the basic basis of it for it just for instance one of the issues was whether Mr. Williams came outside of his abode to you know to hand those envelopes to stepped across the threshold. Ms. Verden argues that that several times in the brief that officer Hawley forced his way into the house well there's just no I mean there's and there's no proof of that from anything anywhere it could not even be gleaned from any any there's not a single word in the record officer Hawley said I grabbed his arm to put it behind his back to cuff him he pulled me into the house I don't even know if that's a terribly relevant point I mean he had 23 arrest warrants he had a right to be there he even had a right to go into the house I'm just saying that's an example of some of the of what what the district court called facts that from which she denied summary judgment. Another was the size difference between the two men the judge quoted and in in the opinion that he was 60 years old and that Hawley was young and fit but the direct in the record it's the mr. Williams with it was 57 which may not be a huge difference he was 57 he was 6 foot 2 and 207 and according the autopsy report he looked into being fine shape the judge however says he was infirm and that officer Hawley was fit. Was there testimony that he was infirm? No there was not. Well where did that come from? It came from his counsel from argument she test was she testified in her I'm sorry she testified in her deposition that from what she had seen of her dad he had some health issues. So there was some evidence? There was something I'm sorry there was no evidence however that mr. Williams the court cited that mr. Williams tried to take the taser that he couldn't he didn't try to take the taser from the police officer because there were no marks on his uniform implying that if you if someone puts a taser to drive stun on a police officer shirt that that would leave a marking but there's no proof in the record that it would or it wouldn't in other words we don't know that it would or wouldn't we just know that that you know that that's there that that there was she relied the court relied on the autopsy report for a them had to do with the distance that the shots were fired and the basis of that was what's called stippling marks on a on a bullet wound in the and the medical examiner said well normally if it's a shot over three feet away there won't be any stippling remarks but there could be but it but a shot closer wouldn't leave those marks either if it went through a barrier like clothing so it really is no proof of anything as far as the distance and besides that officer Holly testified that all of my shots were about within arm's range so you know three foot arm's length is probably about the same thing if there's not a lot of facts in there can I ask you a question about the evidence on you were just talking about the marks on the shoulder when when he tested when Holly testified that the stun drive stun took effect on his shoulder is that fancy words for he tased me yes okay so so it's not just a mark from the taser gun there was testimony from officer Holly that Williams had gotten the taser and tased him well there's two there's as your honor is probably aware from here in all these cases there's different types of tasers but what what this one was referred to was a drive stun where he'd already shot the prongs he'd already shot the taser at mr. Williams so all that all the thing would do anymore was was shocking you know put it up in shock so what you're saying is it would not that what drives done means there was just a shock but there weren't the prongs that would have would have been remaining in his arm okay correct and and finally in most most upsetting I think for me is the courts finding that all of this could have that a reasonable jury could find that all of this could have been prevented you know by if the offer had if the officer had done things different ways but tried to call for assistance he did he did say at one point he testified at one point that he did try to call for assistance but his call his mic didn't didn't work it didn't the call didn't go through but what's upsetting is that that's that that language from the court flies in the face of Graham B Connor and all the cases Harlow Fitzgerald all the cases that that that this court relies on in its root in its qualified immunity analysis we are not the court is not police officers cannot stand back from quickly evolving situations and and and sit there and decide you know what would be that what would be the how would it look best in front of the Eighth Circuit you know three years from now what should I do they have to they have to react quicker than that this was a fight between two men over a gun the gun was that the court just simply felt like that it should go to the jury but that defeats the purposes of qualified immunity and there's no case from the Eighth Circuit or any circuit under the fact under those facts with with a police officer and a resistant arrestee with with outstanding warrants when a gun is held to a police officer's head there's never been a case in any circuit where a police officer was not entitled to qualified immunity if he with he shot somebody under those circumstances that is clearly established constitutional law he's he did not violate any policy he was trying to save his life and he was justified in that and just because there could be other facts that we'll never know because somebody's dead cannot allow for that to be overlooked and I think that's the error of the court that that should be reversed okay got very little time I'd like to say thank you thank you morning miss Verdon morning may it please the court the issue at the heart of this appeal is whether a reasonable juror could find that officer Holly acted unreasonably when he shot and killed Cletus Williams the district court and you all to take the evidence and the facts in a light most favorable to the appellee mr. Burt or mr. Newell excuse me is asking the court to just simply take the officer's testimony without looking at all the other circumstantial evidence and as the court said in Scott the Henrich you can't simply look at the officer's testimony because it's probably self-serving because the person most likely to contradict that testimony was shot and fine and see if there is enough there that a reasonable juror could find that he acted unreasonably you heard me say earlier the problem is there you only have one person one side of the story but you still you can draw reasonable inferences and the question always is is a reasonable inference or is it speculation so why'd you go through your other circumstances and and tell me why it's reasonable inference and not speculation okay first officer Holly I'm gonna go I'll start with the taser when officer Holly first deployed the taser on mr. Williams he testified that before he before you get into that is there anything about the crossing the threshold and being pulled back in is there anything other than speculation to support well officer Holly testified that he could have let go of mr. Williams arm and if he had let go of mr. Williams arm he wouldn't have been pulled across the threshold and he testified he could have done that but he decided not to he chose not to well but but once once he steps across the threshold the officer can make the rest and then the officer can pursue him inside the question is did he step across the threshold is there anything did mr. Williams steps across the threshold actually an officer Holly's initial testimony officer Holly said that all mr. Williams did was put his arm outside the door to hand mr. or 10 officer Holly paperwork so officer Holly himself testified that mr. Williams didn't step across across the threshold he testified that he stuck his arms around the door arm went across the threshold right his arm did and officer Holly grabbed his arm and mr. Williams pulled his arm back and officer Holly says that he got pulled inside but he also said that he could have easily let go of his arm because mr. Williams had no history of violence there is no reason to think he posed a threat to off at this point to officer Holly or anyone else in the community the other problem is officer Holly violated a lot of the Jonesboro Police Department's own policies and procedures that were put in place to protect both officer Holly's rights and mr. Williams rights for one thing I mean he starts off violating them he never checked after leaving the department to see if the warrants had been taken care of and they make a lot a big deal about there being 23 warrants but they were for for misdemeanor charges and contempt of court stemming from that and none of them were for misdemeanors now a scuffle ensued and it's not really clear what happened all that was clear is at some point officer Holly slammed mr. Williams against the wall because there was a baseball or softball sized indention into the plaster of the doorframe and officer Holly testified that he just couldn't get mr. Williams arm behind his back so officer Holly steps away and I asked him I said at this point what was mr. Williams doing he said he was standing by his I said he wasn't fleeing he was standing by his door were they inside they were inside mr. Williams house yes and mr. Williams was standing by his door and officer Holly didn't indicate that there was any reason to think mr. Williams would flee or anything like that he said that he put his taser out and he deployed the taser and I said well couldn't you have called for backup that at that point and he said yes I could have but he chose not to again and the problem is another part of the Jonesboro Police Department manual says that the amount of force an officer may use must be based on the surrounding circumstances including the feasibility and availability of alternative actions and officer Holly testified several times that he had these alternative actions available he could have called is there any case law out there that says the officer has an obligation to call back up we're talking about here you know their knowledge yes it's excessive force but you've got to have something that tells warns an officer that he's got a call back up and similar type circumstances I don't have any case law that says that but I would say that he was aware that he should do that since his own department's policies and procedures said that if he has that option available he should use that that overturned a qualified immunity summary judgment decision because the officer escalated the situation and I have it cited in my brief and I do not have it off the top of my head but it is cited in my brief and that's what officer Holly did in this case he was a cowboy he liked he used force and his taser more than anyone else on the police department and on this day in question instead of choosing the available actions he engaged in conduct that was unreasonable and led to a man's death mr. Newell said that the gun was held at officers Holly's head and to me that seems indicate he was held like this that wasn't the testimony officer Holly said it was above his head or something but the problem is officer Holly testifies that mr. Williams never struck him he never attempted to strike him officer Holly doesn't even say that he tried to take the gun away from him if you look at just offer officer Holly's testimony he said that he had his hand on the gun well that's because officer Holly had the gun stuck into mr. Williams abdomen and if someone had a gun stuck into mine I believe I would try to get it out to so the testimony is that from officer Holly is that Williams never grabbed for the gun or tried to get the actual gun until after Holly had taken it out from his holster and put it up against him correct so is there any testimony from officer Holly that Williams was trying to get the gun from the holster on his none whatsoever there's no testimony that the only testimony from officer Holly that mr. Williams did anything was that mr. Williams took the taser away and tried to use a taser on him but officer Holly can't explain how he got the taser or how he was trying to use it on him and as I said even if you try to drive son somebody I know the probes will leave marks but it drives and believe burn marks to and there were no burn marks there were no marks on the uniforms in a hop officer Holly even testified that his arm still worked what's the testimony and I could because I couldn't I couldn't piece there was a gap for me between the tasing incident and the couch it almost seemed like there was the tasing incident and then suddenly the both on the couch is that a looked or is it truly a gap in the testimony it's a gap in officers Holly's testimony and as judge Riley pointed out we don't know what happened because the other person who could have maybe filled in the gap is dead officer Holly can't explain how Williams got the taser or how he got on top of him I asked him I said aren't you trained in defensive tactics and he said yes and I said well how did this happen I don't know it just did that's his testimony he has no at just officer Holly's testimony he even says that even though mr. Williams was on top of him he wasn't trying to hit him he wasn't striking him mr. Newell tries to say that mr. Williams was physically fit he was 57 he had diabetes heart problems and a bad back and that's from miss Williams testimony and from the autopsy report so it's not just the daughter his daughter's testimony that's the medical examiner's testimony as well and also I want to Mr. Newell says that the clothes caused there not to be any stippling on the body but dr. Dye didn't say that if there's clothes there's not gonna be any stippling on the body he said that stippling occurs with a shot within three feet he found he testified that he found no evidence of shots closer than three feet except for the ones on the hands and the ones on the hands could have been made in defensive posture and dr. Dye also testifies that the ones on the back of his arms could have been made while trying to protect himself and if you take that and view that in a lot most favorable to the appellee if mr. Williams was more than three feet away and in a defensive posture he posed no threat to officer Holly and that's what the judge was looking at in the district court case the other problem is if a gunshot went off by officer Holly's head there should have been residue on officer Holly but there's no evidence of any residue on officer Holly either because officer Holly went home and took a shower and that's one thing that bothers me a lot is that he were taking his testimony and he went home and took a shower and it doesn't line up with all the physical evidence and he doesn't have explanation for everything in just the physical evidence shows that mr. Holly or officer Holly was a greater threat to mr. Williams than mr. Williams was to Holly mr. Williams had five blunt force trauma injuries and eight gunshot wounds officer Holly had three minor scratches to his forearm and I think that's from when he got pulled inside the house he reached in with his right arm got pulled inside the house got a few scratches on it and that is the only wounds on officer Holly compared to the five blunt force trauma and eight gunshot wounds on mr. Williams for these reasons I'd ask this court to uphold the decision of the district court in finding that a reasonable jury could find that officer Holly acted unreasonably okay thank you thank you mr. newly you have a little bit of time I I was trying to count the number of times that that the council use the words could have or might have it you know this might have happened and I think that's what the court might have been looking at but the problem is there's got to be facts to meet the facts that were were testified by officer Holly and and there just weren't sufficient facts for the court to have motion for summary judgment on qualified immunity the Scott v. Henry case is extremely troubling that it was cited by counsel that was relied upon by the district court it was miscited that case the language in that case concern it that was quoted by counsel and cited by the court appeared in the portion of the opinion that has to do with the summary judgment standard which your honors were well aware of problem is in this particular case the district court cited it in the portion of her opinion talking about whether or not there was a constitutional violation and so the reason that's terribly important is because it because the court takes the this seemingly benign language and now it's inserted in a part of the opinion that says that for an in a qualified immunity case the district court is essentially free to disregard the testimony of a police officer if there's no other witness there and simply go on an exploratory mission to find out what else maybe could have happened and I think that's dangerous your time's up what I promise you we will not do that but I know we will look at the record closely and see if they're reasonable inferences that can go to a jury thank you thank you okay thank